**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

Ruknuddin MASIHUDDIN, et al.,

                                        Plaintiffs,

              -against-

Edward J. GAVIN, et al.,

                                        Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 9/16/2013 __

**10-CV-06006 (GBD)(SN)**

**REPORT &**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

        *Pro se* plaintiff Ruknuddin Masihuddin and six family members – Quamrunnisa

Masihuddin, his mother; Amena Masihuddin, Saba Masihuddin, and Phulmattie Masihuddin,[1] his

sisters; Achamma Mathews, his mother-in-law; and Qaiser Choudri, his cousin (collectively,

"plaintiffs") – bring this action pursuant to 42 U.S.C. § 1983, seeking monetary damages and

injunctive and declaratory relief. Plaintiffs' grievances arise from two series of events: (1)

Ruknuddin Masihuddin's arrest and continued jailing for repeated violations of Queens family

court orders, including his refusal to provide that court with his children's whereabouts (the

"arrest" claims); and (2) defendants' alleged searches of plaintiffs' residences, and one place of

business, to locate the missing children (the "search" claims). From the first series of events,

Ruknuddin Masihuddin claims false arrest and incarceration, malicious prosecution, and

---

[1] Although, in his deposition Ruknuddin Masihuddin refers to Phulmattie Masihuddin as his sister-in-law, in her affidavit opposing defendants' motion for summary judgment she appears to refer to Ruknuddin Masihuddin as her brother, Amena Masihuddin and Saba Masihuddin as her sisters, and Quamrunnisa Masihuddin as her mother. Accordingly, the Court will refer to her as Ruknuddin Masihuddin's sister for the purposes of this opinion.

malicious abuse of process in violation of his Fourth, Fifth, and Fourteenth Amendment rights. From the second series of events, plaintiffs collectively claim unlawful searches and excessive force, also in violation of their Fourth, Fifth and Fourteenth Amendment rights. Plaintiffs further allege a conspiracy to violate their federally protected rights, and assorted supplemental state law claims of assault,[2] trespass, and failure to supervise.[3]

Plaintiffs bring their claims against defendants New York City Administration for Children's Services ("ACS") and five ACS employees: (1) Investigative Consultant Edward J. Gavin; (2) ACS Supervisor Gail Banton; (3) ACS Supervisor Natasha Bruneus; (4) ACS Child Protective Specialist Kelly Bradley; and (5) ACS Child Protective Specialist Cynthia Gallardo (collectively, "defendants"). Defendants have moved for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure, and plaintiffs have opposed that motion.

For the reasons that follow, I recommend that defendants' motion for summary judgment be DENIED as to (1) the Fourth Amendment search and state law trespass claims of Ruknuddin Masihuddin, Quamrunnisa Masihuddin, Amena Masihuddin, Saba Masihuddin, Phulmattie Masihuddin and Qaiser Choudri, as they relate to Gavin and the City (only as to the state law claims) and (2) the Fourteenth Amendment excessive force and state law assault and battery claims of Quamrunnisa Masihuddin as they relate to Gavin and the City (only as to the state law claims). Defendants' motion should be GRANTED as to all other claims.

---

[2] The Court construes this as a claim for assault and battery under state law. See United Nat'l Ins. Co. v. Waterfront New York Realty Co., 994 F.2d 105, 108 (2d Cir. 1993).

[3] Defendants do not address plaintiffs' excessive force, conspiracy, or supplemental state law claims. To the extent they would now argue that they did not have notice of those claims, those arguments are unpersuasive. They plainly had notice through plaintiffs' amended complaint and affidavits, and they were provided with an opportunity to amend their reply in light of plaintiffs' statements of disputed facts, which also referenced those claims.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

## I.    Queens Family Court Protective Orders

On August 4, 2008, ACS commenced a child protective proceeding against Ruknuddin Masihuddin pursuant to Article 10 of the Family Court Act. The Queens family court issued an order of protection against Ruknuddin Masihuddin and in favor of his children and their mother, Binu Masihuddin. Ruknuddin Masihuddin was not present at this hearing, but he attended subsequent court proceedings where the order was re-issued, including a May 19, 2009 court date when, defendants attest, he received a copy of the order of protection.[4]

On September 8, 2009, the Queens family court found that ACS had proved, by a preponderance of evidence, that Ruknuddin Masihuddin had neglected his children under § 1012 of the Family Court Act. The court found, *inter alia*, that Ruknuddin Masihuddin had: emotionally, sexually, and physically abused Binu Masihuddin; compelled her to engage in sex acts in front of their children; used money and power to ensure that she would be fearful and without recourse; systematically separated their children from her; and caused their children severe emotional harm by denying them access to Binu Masihuddin without lawful reason. The court ordered that the children were to be released into Binu Masihuddin's custody, with supervision from ACS.

---

[4] Plaintiffs state that they do not dispute this fact. In his deposition, however, Ruknuddin Masihuddin disputed that he ever received notice of an order of protection before he was jailed on October 5, 2009. Nonetheless, he also stated that he was aware that the Court had ruled that he could not have any interaction with his children other than supervised visitation; that he had been served with at least one neglect petition and had read it; that he received other orders from the Queens family court (although he did not remember how many); that orders were sent to his counsel at the time (even if he stated he did not receive them); and that his attorney told him that there was an order of protection against him sometime in late 2008 or early 2009 and provided him with a copy of the order of protection.

On that same day, the Queens family court issued a final order of protection against Ruknuddin Masihuddin. This order directed him to stay away from his children and Binu Masihuddin, except for agency supervised visits, stay away from the home, school, business, and place of employment of his children and Binu Masihuddin, and refrain from assaulting, stalking, harassing, menacing, or intimidating his children and Binu Masihuddin.

## II.   Arrest and Incarceration

On September 11, 2009, ACS applied for a warrant directing Ruknuddin Masihuddin to produce his children in Queens family court. In a supporting affidavit, ACS contended that on September 9, 2009, Bradley made a home visit to Ruknuddin Masihuddin's maternal grandmother, who informed Bradley that Ruknuddin Masihuddin had absconded to upstate New York with Binu Masihuddin and his children. The affidavit further advised the court that ACS had been unable to contact either parent through their cellphones.

That same day, the Queens family court filed arrest warrants for Ruknuddin Masihuddin and Binu Masihuddin with the NYPD, commanding any police officer in the State of New York to arrest Ruknuddin Masihuddin and Binu Masihuddin and, under the Family Court Act, to bring their children before the court.

On October 5, 2009, Ruknuddin Masihuddin was arrested and brought before the Queens family court. At that time, Binu Masihuddin and the children had not been found, and Ruknuddin Masihuddin refused to provide information as to their whereabouts. Accordingly, the court ordered that Ruknuddin Masihuddin be delivered to the custody of the New York City Department of Correction ("DOC") and jailed.

Between October 5, 2009, and October 13, 2009, Ruknuddin Masihuddin refused to provide the court with the location of his children, and the court accordingly issued repeated directives that he remain in custody and be produced in court for further proceedings.

On October 9, 2009, the court issued a warrant commanding any police officer in the State of New York to arrest Achamma Mathews and, under the Family Court Act, to bring Ruknuddin Masihuddin's children before the court.

On October 13, 2009, the Queens family court held a hearing and ordered Ruknuddin Masihuddin's continued incarnation and remand to the DOC's custody based, *inter alia*, on his repeated failures to respond to the court's directives, his inconsistent testimony about his residence and employer, his prior kidnapping of Binu Masihuddin and history of violent behavior towards her.

On that same day, the court issued an order directing the temporary removal of the children from Binu Masihuddin based on her failure to comply and cooperate with ACS supervision. On October 15, 2009, Bradley reported Masihuddin's children as missing persons to the New York City Police Department.

On October 19, 2009, the court ordered Ruknuddin Masihuddin's continued incarceration and remanded him to the custody of the DOC, based *inter alia*, on his contradictory statements regarding the whereabouts of his children.

### III.    Searches

During Ruknuddin Masihuddin's jailing, the Queens family court entered multiple directives, issued arrest warrants, and signed at least one subpoena to locate his children.

Pursuant to these directives, Gavin accompanied police officers and other individuals to various locations to search for the missing children. In his deposition, he stated that he did not

5

have search warrants to enter these locations in order to locate the children, but that he entered

only when given permission. He also stated (in response to a question from Ruknuddin

Masihuddin), that ACS procedure was to enter a home only if permission was granted.

In plaintiffs' affidavits supporting their opposition, plaintiffs each attest that "defendants"

pushed their way into their residences, and that the "defendants" were "very physical and

aggressive." Quamrunnisa Masihuddin claims that "defendants" knocked her down and she

subsequently required hospitalization for bruises, but submits no hospital records to substantiate

her claim.[5] Ruknuddin Masihuddin's sisters state that they were present and witnessed this event.

Gavin, in his deposition, states that where he recalls entering plaintiffs' residences, he was

granted entrance and did not use force.

On or about October 24, 2009, the Masihuddin children were located and produced

before the Queens family court.

## IV.    Violation Petition

On October 26, 2009 – after the children were found but during Ruknuddin Masihuddin's

incarceration – Bradley filed a violation petition on behalf of ACS, requesting the suspension of

Ruknuddin Masihuddin's visitation privileges with his children, and his commitment to jail for

no longer than six months. The petition was based on Ruknuddin Masihuddin's alleged willful

violation of the court's August 4, 2008 order of protection.

On October 28, 2009, the Queens family court ordered that Ruknuddin Masihuddin be

produced for a hearing on November 4, 2009, regarding the violation petition, and that he be

released upon the posting of $25,000 bail and the surrender of his Alien Registration Card and

---

[5] In his deposition, after stating that he had no personal knowledge of the events in question, Ruknuddin
Masihuddin stated that his mother did not go to the hospital, but potentially his sister did.

his children's passports to the Queens family court. Having met these terms, Ruknuddin Masihuddin was released on or about November 4, 2009.

On October 29, 2009, the court issued an order directing the temporary removal of the children from Binu Masihuddin's custody. This order was based on her failure to enforce the final order of protection against Ruknuddin Masihuddin, or disclose the location of the children or herself.

On April l, 2010, the Queens family court dismissed the violation petition on procedural grounds, finding that the petitioner had failed to prove that Ruknuddin Masihuddin was either personally served with the August 4, 2008 order of protection, or that he otherwise had knowledge of its terms.

## V.      Orders Following Release

Following Ruknuddin Masihuddin's release from jail, the Queens family court continued to issue orders against him.

On November 24, 2009, the Queens family court issued an order of protection against Ruknuddin Masihuddin, *inter alia*, ordering him to stay away from his children and wife, except for agency supervised visits.

On March 23, 2010, the court issued a temporary order of protection against Binu Masihuddin, ordering her to prohibit telephonic or electronic communication between Ruknuddin Masihuddin and the children, and to enforce the final order of protection against him. The order was reissued on May 11, 2010, and then was extended through July 13, 2010, and eventually through September 8, 2010.

On June 25, 2010, the Queens family court issued a permanency hearing order and found that continued placement or temporary removal of the Masihuddin children was required in the

best interests and safety needs of the children, and that the children would be at risk of further abuse or neglect if returned to Ruknuddin Masihuddin.

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on August 10, 2010. On August 19, 2010, the Honorable George B. Daniels referred this matter to Magistrate Judge Theodore H. Katz for general pretrial supervision and dispositive motions requiring a report and recommendation. On September 3, 2010, Judge Daniels granted defendants' untimely request to extend their time to respond to plaintiffs' complaint from August 31, 2010, to October 18, 2010. On October 20, 2010, Judge Daniels granted defendants' second request to extend their time to respond from October 18, 2010, to November 1, 2010. On November 2, 2010, Judge Katz granted defendants' third request to extend their time to respond from November 1, 2010, to November 15, 2010. On November 15, 2010, defendants filed their answer.

On December 28, 2010, plaintiffs filed an amended complaint, and on January 26, 2011, defendants filed their answer to the amended complaint. On June 1, 2011, Judge Katz granted defendants' request to extend the discovery deadline from May 31, 2011, to July 30, 2011, and their time to file a dispositive motion to August 30, 2011. On August 8, 2011, Judge Katz granted defendants' untimely request to extend the discovery deadline from July 30, 2011, to August 30, 2011, and their time to file a dispositive motion to October 28, 2011. On August 9, 2011, Judge Katz denied plaintiffs' request to further extend the schedule. On September 1, 2011, Judge Katz granted defendants' request to extend the discovery deadline to September 16, 2011. On December 19, 2011, Judge Katz granted defendants' untimely request to extend the deadline for dispositive motions to January 12, 2012. On February 24, 2012, Judge Katz granted

defendants' untimely request to extend the deadline for dispositive motions to March 30, 2012. He stated that there would be no further extensions.

On June 12, 2012, the magistrate judge referral was reassigned to Magistrate Judge Kevin Nathaniel Fox. On June 18, 2012, Judge Fox ordered that the parties submit their joint pretrial order on or before July 18, 2012. On July 23, 2012, Judge Fox granted plaintiffs' request to extend until August 3, 2012, their time to submit the joint pretrial order. On August 3, 2012, Judge Fox denied defendants' request for an extension of time to file dispositive motions. On November 19, 2012, after defendants apparently petitioned Judge Daniels, a conference was held with the parties. On that same day, Judge Daniels re-referred the case to Judge Fox to determine three questions.

On November 27, 2012, the magistrate judge referral was reassigned to my docket. I then scheduled a status conference to address the questions raised in Judge Daniels's referral. Plaintiffs failed to appear at that conference. On March 29, 2013, the parties appeared for a rescheduled status conference. On May 2, 2013, I permitted defendants' to file their already drafted motion for summary judgment, which they filed that same day. On June 3, 2013, plaintiffs filed a "cross-motion" for summary judgment. On June 8, 2013, defendants filed their reply to plaintiffs' opposition. On June 10, 2013, I granted plaintiffs' request for an extension of time to file their "opposition" to defendants' motion for summary judgment, allowing defendants an opportunity to file a revised reply memorandum by June 17, 2013. On that same day, plaintiffs filed their opposition papers. Defendants chose not to revise their reply, and accordingly on June 17, 2013, the motion became fully briefed.

**DISCUSSION**

Defendants have moved for summary judgment on the grounds that: (1) Ruknuddin Masihuddin cannot assert claims on behalf of the other plaintiffs; (2) plaintiffs' federal claims lack legal merit; (3) the individually named defendants have qualified immunity; and (4) plaintiffs have not shown a policy, practice or custom that caused their alleged constitutional deprivation. Plaintiffs have articulated no specific basis for their motion for summary judgment, and the Court cannot discern any. Accordingly, plaintiffs' cross-motion is more properly viewed as part of their opposition to defendants' motion. See Stone v. 866 3rd Next Generation Hotel, LLC, 99 Civ. 04780 (LTS)(KNF), 2002 WL 482558, at *1 n.2 (S.D.N.Y. Mar. 29, 2002) (deeming plaintiff's memorandum in support of cross-motion as an opposition to defendants' motions), vacated in part on unrelated grounds, Stone v. Courtyard Mgmt. Corp., 353 F.3d 155 (2d Cir. 2003).

## I.    Statement of Law

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., LP, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case

will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). To create a disputed fact sufficient to deny summary judgment, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). "[R]ather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation and internal quotation marks omitted).

Where, as here, *pro se* litigants are involved, although the same standards for dismissal apply, a court should give those litigants special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))). In particular, the *pro se* parties must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment.  See Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York; see also McPherson, 174 F.3d at

281. In addition, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Giannullo v. City of New York, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that not verifying the assertions in the Rule 56.1 statement "would derogate the truth-finding functions of the judicial process by substituting convenience for facts")).

## II.   Timeliness

Plaintiffs, as a threshold issue, argue that defendants' motion for summary judgment should be denied because it was not timely filed and served. The Court has discretion to excuse a party's untimely filing of summary judgment papers. See DiGennaro v. Whitehair, 467 F. App'x 42, 43 (2d Cir. 2012) (stating that a district court has "general power to administer its docket" (citing Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000))). This discretion should be used to modify filing deadlines when "the interests of justice make such a course desirable." Villante v. VanDyke, 93 F. App'x 307, 309 (2d Cir. 2004) (citations omitted). In making such a determination, the Court must balance "the need for doing justice on the merits against judicial efficiency." Id. (citations omitted).

The Court is sympathetic to plaintiffs' argument. Defendants were granted five extensions of the discovery deadline and/or their time to file a motion for summary judgment. Three of those requests were submitted after the applicable deadline already had expired. Then during a period from March 30, 2012 – which was set as the final deadline for dispositive motions – to June 18, 2012 – when Judge Fox ordered the parties to submit their joint pretrial order – defendants did not appear to contact the Court. Indeed, it was not until August 2, 2012, that defendants wrote to Judge Fox requesting an extension of time to file their dispositive

motion. To call this dilatory conduct unprofessional would be an understatement. Counsel's actions fully warrant the Court's refusal to allow counsel to submit a motion for summary judgment.[6] If the Court had followed this course of action, the fault would have lain entirely with defendants' counsel, to the detriment of her clients. Nonetheless, after much reflection, I exercised my discretion to allow counsel to submit the motion. In the end, justice would not have been served by allowing plaintiffs' claims to go untested. See Fed. R. Civ. P. 1. Indeed, I believe that both efficiency and justice are best served by allowing these claims to be vetted (they have not been subjected to any prior motion practice) before submitting them to judge and jury, with the concomitant time and expense to the judiciary, the parties, and the public. See Villante, 93 F. App'x at 309-10 (holding that the district court did not abuse its discretion in allowing defendants to file an untimely second motion for summary judgment, because it saved expense of preparing for futile trial). Accordingly, defendants' summary judgment motion should not be denied on this ground.

## III.   *Pro Se* Plaintiff as Lead Plaintiff

Defendants, as a threshold issue, contend that *pro se* plaintiff Ruknuddin Masihuddin attempts to represent the interests of the other plaintiffs in this action by bringing claims on their behalf. Non-attorneys cannot represent other individuals. See Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("A person must be litigating an interest personal to him.") (citing Pridgen v. Andresen 113 F. 3d 391, 393 (2d Cir. 1997)). But defendants' argument for dismissal mischaracterizes the relationship between Ruknuddin Masihuddin and the other plaintiffs. Here, all of the plaintiffs have participated in the prosecution of this claim by executing and signing the complaint, participating in discovery, submitting affidavits, and filing statements of disputed

---

[6] The Court should clarify that defendants' current counsel is not responsible for these delays.

facts pursuant to Rule 56.1. Although Ruknuddin Masihuddin testified in his deposition that he "represented" the other individuals, as a *pro se* litigant he can be excused from not knowing the precise legal import of that term. Accordingly, summary judgment cannot be granted on this basis.

## IV.    Personal Involvement

To prevail on their § 1983 claims, plaintiffs must show that they were deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under the color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). The Court of Appeals for the Second Circuit has long recognized that plaintiffs asserting claims under § 1983 first must allege the personal involvement of each defendant. See, e.g., Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994))).

Although plaintiffs' motion papers and supporting affidavits fail to specify the involvement of the individual defendants in any of the substantive claims – referring instead to "defendants"[7] – the Court is cognizant of plaintiffs' *pro se* status and has examined the submitted depositions, court transcripts, and affidavits to determine defendants' titles and their probable

---

[7] In plaintiffs' statements of disputed facts, they identify each defendant and connect him or her to each alleged violation. But these statements provide scarcely more aid in establishing personal involvement: they simply state that each defendant performed each violation. For example, plaintiffs write that "[d]efendant Edward J. Gavin forcibly searched and/or supervised the forcible search of [p]laintiff Ruknuddin Masihuddin's residence without a warrant to locate and seize [p]laintiff Ruknuddin Masihuddin's children," and in the next paragraph repeat the claim verbatim with "Gavin" replaced by "Bradley" – and then "Gallardo," "Benton," etc., until all defendants, and plaintiffs, are named. (See, e.g., Plaintiff Ruknuddin Masihuddin Statement of Disputed Facts ¶¶ 25-66.) They do not identify any evidence to support these conclusory statements.

alleged roles this action. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' . . . ." (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000))). In light of this examination, the Court has made the following determinations as to the involvement of each of the individual defendants.

All claims against ACS supervisors Gail Banton and Natasha Bruneus must be dismissed because there is no evidence that they personally were involved in any alleged deprivation of plaintiffs' rights. So far as the Court can tell, plaintiffs have submitted information only indicating that Banton and Bruneus were supervisors. But "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest [simply] on *respondeat superior*." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); see Friedman v. N.Y.C Admin. for Children's Servs., 502 F. App'x 23, 27 (2d Cir. 2012) (finding that ACS supervisor who instructed caseworker to file neglect petitions against plaintiff in § 1983 action was not liable: she was not personally involved; assuming she was personally involved, there was a reasonable basis for the filing; and, even assuming there were deficiencies in the investigation, an imperfect investigation alone does not give rise to a constitutional violation). Plaintiffs similarly have failed to make any showing that Banton and Bruneus were personally involved in tortious conduct pertaining to plaintiffs' supplemental state law claims.

All "search" claims against ACS Child Protective Specialists Kelly Bradley and Cynthia Gallardo also must be dismissed because plaintiffs have provided no evidence that they personally were involved in the searches at issue. It appears that Gallardo visited Achamma Mathew's residence in 2008 to conduct a home assessment to make sure that the home was safe

15

for the Masihuddin children and was responsible for serving Ruknuddin Masihuddin with the orders of protection filed against him.[8] And, it appears that Bradley reported Ruknuddin Masihuddin's children as missing persons, and filed the Violation Petition against Ruknuddin Masihuddin. Such evidence arguably is relevant to plaintiffs' arrest claims (which, as discussed *infra*, are themselves without merit), but no reasonable juror could implicate either Bradley or Gallardo for allegedly warrantless searches in October and November 2009, based on a 2008 home assessment.

Finally, all "arrest" claims against Investigative Consultant Edward Gavin must be dismissed because plaintiffs have provided no evidence that he was personally involved in Ruknuddin Masihuddin's arrest or prosecution. Because plaintiffs allege, through signed affidavits, that Gavin forcefully entered their residences and place(s) of business in October and November 2009, however, they have sufficiently pled his personal involvement in the "search claims."[9]

Accordingly, on the basis of a lack of personal involvement, all claims against Banton and Bruneus, all "search" claims against Bradley and Gallardo, and all "arrest" claims against Gavin should be dismissed. This means that, read liberally, plaintiffs have sufficiently alleged the personal involvement of Bradley and Gallardo in the "arrest" claims, and Gavin in the "search" claims – at least to the extent that these particular claims should not be denied on this basis.

---

[8] It is unclear from Ruknuddin Masihuddin's deposition testimony whether Gallardo is alleged to be responsible for serving, or for failing to serve, those papers.

[9] As will be discussed *infra*, Gavin strongly disputes these allegations. But it is not the Court's role on summary judgment to determine whose truth should prevail.

**V.      Substantive Claims**

Turning to the substantive law, claims brought under § 1983 are guided by the tort law of the forum state – in this case, New York. See, e.g., Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). As discussed, Ruknuddin Masihuddin brings three "arrest" claims that allege violation of the Fourth Amendment: false arrest and imprisonment, malicious prosecution, and malicious abuse of process. Plaintiffs also collectively bring two "search" claims: a Fourth Amendment unlawful search claim, and a Fourteenth Amendment excessive force claim.

**A.   Arrest Claims**

**(1) Statement of Law**

 "[A] plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (citations and internal quotation marks omitted). The elements required to prove false imprisonment under New York law are the same as those required for false arrest. See Kilburn v. Vill. of Saranac Lake, 413 F. App'x 362, 363 (2d Cir. 2011) (summary order stating that, "[u]nder New York law, the [false imprisonment] claim is identical to a false arrest claim (citing Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991))); see also Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) ("The common law tort of false arrest is a species of false imprisonment . . . ." (citation omitted)). Probable cause is a complete defense to both claims. Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010); Singer, 63 F.3d at 118.

A plaintiff claiming malicious prosecution must demonstrate a seizure amounting to a Fourth Amendment violation. See Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); Singer, 63 F.3d at 116 ("The Fourth Amendment right implicated in a malicious

prosecution action is the right to be free of unreasonable seizure of the person – *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure'". The seizure must have been effected "pursuant to legal process." Singer, 63 F.3d at 117 (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Typically, the tort implicates post-arraignment deprivations of liberty. Id.

To make his case, a plaintiff also must establish the elements of a malicious prosecution claim under state law. In New York, this means that a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello, 612 F.3d at 161 (citation and internal quotation marks omitted). Probable cause also is a complete defense to a malicious prosecution claim. Id. at 161-62; Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).

A plaintiff claiming malicious abuse of process must show defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act[;] (2) with intent to do harm without excuse o[r] justification[;] and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino, 331 F.3d at 76-78 (finding that to state a claim, plaintiff could not simply allege that defendants sought to retaliate against him by pursuing his arrest and prosecution but, rather, must claim that defendants aimed to achieve a collateral purpose beyond or in addition to criminal prosecution); see Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994).

### (2) Application of Law to Arrest Claims

Ruknuddin Masihuddin alleges that his Fourth Amendment rights were violated because he was falsely arrested and maliciously prosecuted, which amounted to a malicious abuse of power. But it is an undisputed fact that the Queens Family Court issued a warrant for Ruknuddin Masihuddin's arrest, and that he was arrested pursuant to that warrant. An arrest made pursuant to a facially valid arrest warrant is presumed to be made with probable cause, although plaintiffs may attempt to challenge the validity of the warrant to dispute that presumption. See Martinetti v. Town of New Hartford, 12 F. App'x 29, 32 (2d Cir. 2001); Artis v. Liotard, 934 F. Supp. 101, 103 (S.D.N.Y. 1996) (citing Baker v. McCollen, 443 U.S. 137, 145 (1979)). Here, plaintiffs state that an issue of material fact exists as to probable cause for the arrest warrant, but provide no evidence to support this statement. Such unsupported assertions are legal conclusions insufficient to defeat summary judgment. Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) ("'[C]onclusory statements or mere allegations' will not suffice to defeat a summary judgment motion." (quoting Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002))). Plaintiffs have not provided evidence showing that the warrant was invalid. Accordingly, probable cause for Ruknuddin Masihuddin's arrest has been established as a matter of law. Because probable cause is a complete defense to false arrest and imprisonment claims, see Amore, 624 F.3d at 536; Singer, 63 F.3d at 110, summary judgment must be granted for defendants on these claims.

Probable cause also is a complete defense to a malicious prosecution claim, although the focus is shifted to whether there was "probable cause to believe that [the arrestee] could be successfully prosecuted." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 417 (2d Cir. 1999); see Manganiello, 612 F.3d at 161-62; Savino, 331 F.3d at 75. Nonetheless, if the officials had probable cause to arrest, a plaintiff claiming malicious prosecution must "demonstrate

19

mitigating facts to vitiate probable cause which were first uncovered after the arrest." Drummond v. Castro, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (citation omitted); accord Carthew v. Cnty. of Suffolk, 709 F. Supp. 2d 188, 202 (E.D.N.Y. 2010) (citations omitted); Grossman v. City of New York, 07 Civ. 02764 (RMB), 2008 WL 563413, at *3 (S.D.N.Y. Feb. 28, 2008). Here, plaintiffs have not made the required showing of facts vitiating probable cause. Gallardo served Ruknuddin Masihuddin with the orders of protection, and Bradley reported his children missing and filed the violation petition. But these documents appear at least facially supported by probable cause. And, crucially, plaintiffs have not shown how these documents might impinge the probable cause of Ruknuddin Masihuddin's previous arrest warrant. Accordingly, summary judgment must be granted for defendants on this claim.

Similarly, regarding the abuse of process claim, Ruknuddin Masihuddin provides no evidence that any defendant had a collateral objective in initiating proceedings against him. Indeed, with the absence of facts to the contrary no reasonable juror could conclude that defendants had any purpose but to find Masihuddin's children, whom they believed to be in danger of injury and abuse. Accordingly, summary judgment must be granted for defendants on plaintiffs' abuse of process claim. Savino, 331 F.3d at 77-78; cf. Douglas v. City of New York, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (stating that "tampering with evidence is not considered abuse of process because the goal – convicting the defendant – is a legitimate use of process" (citation omitted)).

In his opposition, Ruknuddin Masihuddin states that his "arrest" claims are based on defendants' failure to serve him with a violation petition that the Queens family court dismissed when the petitioner failed to show that Masihuddin was personally served or knew of the underlying order of protection's terms. Because of this invalid petition, he argues, he spent a

20

month in jail. But Ruknuddin Masihuddin already was in jail pursuant to a valid arrest warrant when the petition was brought. And he already had been released when the Queens family court dismissed the violation petition on procedural grounds (and not for a lack of probable cause). The dismissal of one violation petition does not retroactively cast doubt on the original arrest warrant's probable cause. Indeed, the dismissal of the violation petition was based on an August 4, 2008 order of protection, which he claims was not served on him (even if by his own deposition testimony there seems to be at least some indication that he was aware of it). The arrest warrant, in contrast, was separately issued on September 11, 2009, upon separately presented facts like, *inter alia*, Quamrunnisa Masihuddin's statement to Bradley that Ruknuddin Masihuddin had fled upstate with his wife and children, and that they could not be contacted. See also United States v. Ventresca, 380 U.S. 102, 109 (1965) ("Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (citation omitted)). Moreover, other Queens family court orders were in place that, consistent with his deposition testimony, Ruknuddin Masihuddin plainly was aware of – even if he does not mention them in his opposition. It was because of his failure to follow the court's directives, his inconsistent testimony, and history of problematic actions directed toward his wife and children, as well as his continued refusal to inform the Court about the location of those children, that Masihuddin was kept in custody. Cf. Contempt Proceeding Under Article 1 of Family Court Act v. Debra W., 19867-71/2010, 2010 WL 3490182, at *8-11, 958 N.Y.S.2d 60 (Fam. Ct. 2010) (table) (discussing – and implicitly countenancing – family court order keeping parent in jail when she continued her refusal to reveal the location of her children).

21

Accordingly, the Court recommends granting summary judgment for the defendants on all arrest claims.

**B. Search Claims**

**(1) Statement of Law**

Plaintiffs who claim unconstitutional searches must establish that those searches were unreasonable. See N.G. v. Connecticut, 382 F.3d 225, 230 (2d Cir. 2004). "In the enforcement of criminal law, a search generally requires the prior issuance of a warrant, supported by probable cause to believe the individual will be found." See id. (citation omitted); see also Wilson v. Layne, 526 U.S. 603, 610-11 (1999); Weyant, 101 F.3d at 852. "In the context of a seizure of a child by the State during an abuse investigation . . . a court order is the equivalent of a warrant." Tenenbaum v. Williams, 193 F.3d 581, 602 (2d Cir. 1999); see Nicholson v. Scoppetta, 344 F.3d 154, 176 (2d Cir. 2003) ("[A] Family Court order is probably the equivalent of a warrant for Fourth Amendment purposes."). State officials who search a home without an appropriate authorization may be liable under § 1983. See also Steagald v. United States, 451 U.S. 204, 212-13 (1981). The overarching principle of this area of the law is that "[t]he test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 559 (1979).

**(2) Application of Law to Search Claims**

Plaintiffs generally allege that defendants' searches to find Masihuddin's children were unreasonable and employed excessive force. During a period between October 5, 2009, and

November 4 or 5, 2009 – while Ruknuddin Masihuddin was in jail[10] – Gavin and various non-defendants allegedly conducted searches of five locations.

To begin with the clearly constitutional search, at some point during this time period defendants searched Achamma Mathews's residence at 81-19 257th Street, Floral Park, New York for Masihuddin's children. It is undisputed that on October 9, 2009, the Queens family court issued a warrant of arrest for Achamma Mathews that also ordered any officer in New York State to bring Ruknuddin Masihuddin's children before the Court. This arrest warrant renders the search presumptively reasonable.[11] See Wilson, 526 U.S. at 610-11; United States v. Lovelock, 170 F.3d 339, 343 (2d Cir. 1999) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (citing Payton v. New York, 445 U.S. 573, 602-03 (1980) (stating that once an arrest warrant for a particular suspect has issued, "it is constitutionally reasonable to require him to open his doors to the officers of the law"))); United States v. Lauter, 57 F.3d 212, 214 (2d Cir. 1995) ("Generally, the police do not need a search warrant to enter a suspect's home when they have an arrest warrant for the suspect."). Plaintiffs have not established any material fact to dispute this warrant's validity and, indeed, Mathews

---

[10] In his deposition, Ruknuddin Masihuddin states that some of the searches of his residential property occurred a few weeks before his incarceration. But in the affidavits supporting their oppositions to defendants' motion for summary judgment, all plaintiffs (including Ruknuddin Masihuddin) state that the searches that are the basis of their claims occurred while Ruknuddin Masihuddin was incarcerated.

[11] According to the Banton deposition, this also appears to be the house where Binu Masihuddin and the children resided, and thus the Binu Masihuddin warrant also provided probable cause for the search. Indeed, this address was provided on her warrant. As additional support, the Queens family court issued orders directing the temporary removal of Masihuddin's children from, apparently, this residence. See Tenenbaum, 193 F.3d at 602-03; see also Nicholson, 344 F.3d at 176 ("[A] Family Court order is probably the equivalent of a warrant for Fourth Amendment purposes.").

was present during the search, at the address specified in the warrant. Accordingly, this search was reasonable as a matter of law and summary judgment must be granted to defendants on this claim.

At other unspecified times, defendants also allegedly searched the following locations: (1) Ruknuddin Masihuddin and Qaiser Choudri's residence at 117 Jefferson Avenue, Endicott, New York; (2) Quamrunnisa, Amena, and Saba Masihuddin's residences, and Ruknuddin Masihuddin's former residence, at 602 Porter Street, Elmont, New York;[12] (3) Phulmattie Masihuddin's residence at 105-22 130th Street South, Richmond Hill, New York; and (4) Qaiser Choudri's place(s) of business.

But unlike the search of Achamma Mathews's residence, defendants lacked clear authority to render these searches presumptively reasonable. Rather, the validity of these searches is the central issue in dispute. Plaintiffs attest that the searches were warrantless. Defendants respond that probable cause is established through the warrants issued for Ruknuddin and Binu Masihuddin, and Achamma Mathews, and "multiple directives," which upon examination of defendants' declaration appear to be the orders of removal for Masihuddin's children. (See Defendants' Memorandum of Law in Support of Their Motion For Summary Judgment at 6 (citing Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ¶¶ 15-16, 20).) Defendants' motion for summary judgment must be denied, here, because these sets of documents do not, as a matter of law, establish a reasonable basis for these searches. Defendants have not alleged that Binu Masihuddin or the children could be found at any of these four locations. And defendants provide no other justification.

---

[12] Although not specified in plaintiffs' affidavits, it appears from Ruknuddin Masihuddin's deposition testimony that his sisters live in separate apartments in the same building as his mother.

First, Ruknuddin Masihuddin was already in custody when these searches occurred and, thus, a warrant for his arrest cannot provide a basis for subsequent searches. Similarly, Binu Masihuddin apparently resided at 81-19 257th Street, Floral Park, the address written on her arrest warrant. Defendants have not alleged that she resided or otherwise could have been found at any of the other locations. Finally, the orders of removal for Masihuddin's children were directed to the place of their mother's residence, which the Court assumes to be the same Floral Park residence (although these orders provide no address). Defendants have not alleged that they could be found elsewhere. Thus, as a matter of law, these documents do not establish a basis for the four searches at issue. See Lovelock, 170 F.3d at 343 ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (emphasis supplied; citation omitted)).

To the extent defendants argue that they had the right to enter plaintiffs' homes and business to seize the Masihuddin children based on the family court orders, such argument is unavailing. As an initial observation, it is doubtful that these orders, standing alone, provide constitutional cover for officials to search any place in New York State where the children conceivably might be found. See U.S. Const. amend. IV (stating that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); Payton, 445 U.S. 583 ("It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment."). The Supreme Court recently has reaffirmed that "the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of

particularity in the warrant." Groh v. Ramirez, 540 U.S. 551, 559 (2004); see also Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."). None of the family court orders identified the homes or business that were searched, except for in the instances discussed above.

Moreover, in Hurlman v. Rice, 927 F.2d 74, 80 (2d Cir. 1991), the Court of Appeals for the Second Circuit squarely addressed the use of family court orders in such circumstances, concluding that law enforcement "could not objectively have viewed the family court's temporary restraint of [the parent] as a blanket authorization for them to enter the [grandparents'] home." Id. at 80. "The family court's order to show cause was directed toward [the parent] and placed a temporary restraint on her. It was not an order to the police to enforce her compliance" or to authorize entry into the home of a third party. Id. at 79-80 (citing Steagald, 451 U.S. 204). Accordingly, defendants' searches cannot be deemed constitutionally reasonable based solely on a series of family court orders instructing law enforcement to locate the Masihuddin children and bring them into the care of ACS.

In their motion papers, defendants quote the proposition that officers who enter a location to execute a valid arrest warrant need only a "reasonable belief that the suspect resides at the place to be entered to execute an arrest warrant," and a reasonable belief that "the suspect is present." Lauter, 57 F.3d at 215 (emphasis in original). But reasonableness is a factual inquiry that in most cases should be left to the jury. See Calamia v. City of New York, 879 F.2d 1025, 1035 (2d Cir. 1989) (discussing reasonableness in context of Fourth Amendment excessive force claim); see also Doherty, 944 F.2d at 99 (finding that district court "improperly invaded the province of the jury" by finding that the officer had probable cause to arrest and thus dismissing false arrest claim through a judgment notwithstanding the verdict). Defendants have not made a

showing that the officers had reason to believe that the children were in the searched locations, much less one that could decide the issue as a matter of law.

In Lauter, the police had a valid warrant to arrest the defendant, which identified the defendant's residence. Subsequent to its issuance, the officers learned from a confidential informant that he had moved to a second apartment in the basement of the same building. In affirming the denial of a suppression motion, the Court found that "the proper inquiry is whether there is a reasonable belief that the suspect resides at the place to be entered to execute [the] warrant, and whether the officers have reason to believe that the suspect is present." 57 F.3d at 215 (emphasis in original; citation omitted). The reasonable belief standard of course requires less justification than the test for probable cause. Id. The Court concluded that the arresting agent had the requisite reasonable belief because he had been told by a reliable source that the defendant had moved over the weekend, was unemployed and usually slept late. Id.

Here, in contrast, defendants have provided no information to establish a similar reasonable belief that the children resided in plaintiffs' residences and places of business. Indeed, remarkably, in their Rule 56.1 Statement of Undisputed Facts, defendants do not even discuss the searches or provide any evidence to establish the officers' reasonable belief. Defendants simply point out that orders were issued for Binu Masihuddin and her children, and that they were missing, and hope that the Court will infer that defendants had a reasonable belief to seek out the children in any dwelling or business owned by any Masihuddin relative. This failure to even connect the dots is insufficient to establish reasonable belief as a matter of law. See Groh, 540 U.S. at 557, 559, 562-63 (affirming Court of Appeals, which reversed district court grant of summary judgment on Fourth Amendment claim, when there was disputed fact as to the circumstances surrounding search); cf. United States v. Luckey, 701 F. Supp. 2d 464, 472-74

27

(S.D.N.Y. 2009) (granting motion to suppress where officers did not have reasonable belief to enter home, *inter alia*, when they knew that arrestee had been in vicinity of different apartment at address approximately two weeks before the attempted arrest); United States v. Camilo, 287 F. Supp. 2d 446, 451 (S.D.N.Y. 2003) (finding there was no evidence that Marshals had reasonable belief that arrestee resided in the apartment, but denying motion to suppress based on occupant's voluntary consent to enter).

Indeed, the Supreme Court has held that in order for officers to enter the home of a third party (here, the plaintiffs) in which officers believe the arrestee is visiting (the children), the officers must obtain a search warrant (issued with probable cause), unless the entry otherwise is justified. Steagald, 451 U.S. at 213-16. In Steagald, the Supreme Court warned that a conclusion "that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant [] would create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances." Id. at 215; see also Luckey, 701 F. Supp. 2d at 472 (noting tension between Lauter and Steagald and finding that the cases "can be harmonized . . . because the officers in Steagald knew that they were entering the home of a third party, whereas in Lauter, the officers had a reasonable belief that they were entering Lauter's own residence" (emphasis in original); finding that Steagald controls if the officers knew or had reason to know they were entering a home belonging to a third party but not the arrestee); cf. 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (5th ed. 2011) (stating that to establish probable cause "mere suspicion that persons visiting the premises are connected with criminal activity will not suffice"). Under the plaintiffs' portrayal of the facts, the concern raised in Steagald is plainly present here. (The Court

acknowledges that Gavin's deposition presents a very different picture of what happened during these searches, but this just serves to establish a material issue of disputed fact.)

Although not mentioned by either party, at least two exceptions exist that warrant discussion. First, "in emergency circumstances, a child may be taken into custody by a responsible State official without court authorization or parental consent." See Tenenbaum, 193 F.3d at 594 (citations and internal quotation marks omitted). But emergency removal is justified only if ACS did not have sufficient time, consistent with the children's safety, to obtain prior court authorization. Id. at 594-95. Defendants do not allege that such exigent circumstances exist. And the Court is doubtful they could make such a showing in light of the one-month time period at issue, during which a warrant could have been procured. See Southerland v. City of New York, 680 F.3d 127, 149, 151 (2d Cir. 2011).

Second, individuals may consent to official searches. See Schneckloth v. Bustamonte, 412 U.S. 219, 222 (1973). But defendants have not argued that plaintiffs consented to defendants' entrance. And, although the Court's examination of the record shows that Gavin, in his deposition, stated that Quamrunnisa Masihuddin consented to his entrance into her residence, and that ACS workers do not enter homes or businesses when denied entrance, each plaintiff, in opposition, states that defendants pushed their way into their home or business. This creates a disputed issue of material fact as to whether there was consent. See id. (defendant has burden of showing whether plaintiff's consent to enter a home was voluntary); see also Southerland, 680 F.3d at 156 (finding disputed issue of material fact as to existence of parental consent justifying child removal). No exception to the warrant requirement has been argued, or appears to provide a basis for summary judgment. It is for a jury to decide which version of the searches it finds more credible.

Accordingly, although summary judgment should be granted for defendants on Achamma

Mathews's unlawful search claim, it should be denied as to the claims related to the remaining

four searches.[13] For the same reasons, summary judgment also must be granted as to Achamma

Mathews's supplemental state law trespass claim, but denied as to all other plaintiffs' trespass

claims. Compare McKim v. Cnty. of Rensselaer, 09 Civ. 00650 (GLS)(DRH), 2011 WL

2580327, at *11 (N.D.N.Y. June 28, 2011) (dismissing claim for state law trespass when

"plaintiffs appear to be challenging defendants' entry into their premises on the basis that the

warrant authorizing that entry was deficient" after rejecting the "predicate for the contentions"

that the search warrant was deficient), and Voskerchian v. United States, 98 Civ. 0335E (JTE),

1999 WL 66709, at *4 (W.D.N.Y. Feb. 10, 1999) ("[A] law enforcement officer is privileged to

enter upon premises in the execution of a valid search warrant." (collecting cases)), with United

States ex. rel. Sperling v. Fitzpartrick, 426 F.2d 1161, 1164 & n.10 (2d Cir. 1970) ("Finally we

note that the police officers who subjected appellate to the unlawful search may be subjected to

both federal and state penalties [like a state action for trespass].")., and Vesterhalt v. City of New

York, 667 F. Supp. 2d. 292, 300 (S.D.N.Y. 2009) (although not directly addressed or necessarily

casually related, allowing state law trespass claim to survive after disputed issue existed as to

whether plaintiff's arrest was justified after exigent circumstances allowed warrantless entry into

apartment).[14]

---

[13] The Court is mindful of the critical and compelling work performed by ACS and its employees, and the important societal interest in removing children promptly from dangerous and unhealthy environments. Such conduct, however, are constrained by the Constitution. At this summary judgment stage, the Court cannot conclude, as a matter of law, that these searches comported with the Constitution.

[14] Cf. Rivera v. United States, 928 F.2d 592, 609 (2d Cir. 1991) (stating, in context of suit against United States under the Federal Tort Claims Act ("FTCA"), that "[i]n light of our ruling that there are questions of fact as to the reasonableness of the conduct of defendants during the execution of the search warrants, plaintiffs must be allowed to pursue their common-law tort claims against the United States"); Voskerchian, 1999 WL 66709 at *3-6 (rejecting defendants' arguments and denying motion for summary

## C.  Excessive Force Claims

### (1) Statement of Law

When, as here, plaintiffs do not assert that they were arrested or seized, their claims for

excessive force fall outside the Fourth Amendment and, instead, are governed by the Due

Process Clause of the Fourteenth Amendment. Tierney v. Davidson, 133 F.3d 189, 199 (2d Cir.

1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these [§ 1983]

claims fall outside the Fourth Amendment protections . . . and are governed instead by the Due

Process Clause of the Fourteenth Amendment."); see Hemphill v. Schott, 141 F.3d 412, 418 (2d

Cir. 1998) ("This court has held that outside the context of an arrest, a plaintiff may make claims

of excessive force under § 1983 under the Due Process Clause of the Fourteenth Amendment.");

Rodriguez v. Phillips, 66 F.3d 470, 477 (2d Cir. 1995) ("[I]n the non-seizure, non-prisoner

context, the substantive due process right to be free from excessive force is alive and well."); cf.

Graham v. Connor, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises

in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized

as one invoking the protections of the Fourth Amendment . . . .").[15] The Court must determine

whether the force used "shocks the conscience," Tierney, 133 F.3d at 199, by examining: "[(1)]

_____

judgment on common law trespass claim against United States under FTCA based on plaintiff's
allegation that special agent entered his apartment in violation of Fourth Amendment).

[15] At first blush, these claims seem more reasonably analyzed under the Fourth Amendment. But in
narrowing the range of excessive force claims analyzed under the Fourteenth Amendment Due Process
Clause, and expanding those analyzed under the Fourth Amendment, the Supreme Court discussed claims
only of arrest, investigatory stop, or seizure. See Graham, 490 U.S. at 395. The Court of Appeals for the
Second Circuit subsequently stated that claims outside of these areas remain governed by the Due Process
Clause. Although it seems somewhat curious to exclude searches – the validity of which are analyzed
under the Fourth Amendment – from the Fourth Amendment excessive force analysis, this appears to be
the state of the law. Indeed, in Tierney, 133 F.3d 189, the Court of Appeals analyzed plaintiffs' claims of
excessive force when their home was searched under the Fourteenth Amendment standard because
plaintiffs did not assert that they were arrested or seized. Id. at 199. The Court is governed by this
precedent.

the need for the application of force[; (2)] the relationship between the need and the amount of force that was used[; (3)] the extent of injury inflicted[; and (4)] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "[A] de minimis use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (citation omitted).

### (2) Application of Law to Excessive Force Claims

Plaintiffs' excessive force claims can be grouped into two categories. First, there is the statement by Quamrunnisa Masihuddin – corroborated by Amena Masihuddin and Saba Masihuddin who state that they were present at the time – that defendants pushed their way into Quamrunnisa Masihuddin's residence when she opened the door, knocked her down, and she fell to the floor and required hospitalization for bruises. Second, there are statements by Phulmattie Masihuddin, Achamma Mathews, and Qaiser Choudri that defendants pushed their way into their locations and were very physical and aggressive.[16]

---

[16] Amena Masihuddin and Saba Masihuddin do not plausibly assert that they were subject to excessive force and, accordingly, their excessive force claims must be dismissed to the extent that they are alleged. In his deposition, Ruknuddin Masihuddin states that Saba Masihuddin was the person pushed down and potentially requiring hospitalization. But he also stated he had no personal knowledge of any of the searches; indeed, he could not because he was in jail. Moreover, in her affidavit to the Court, Saba Masihuddin does not testify that she was pushed down. Accordingly, this hearsay statement (uncited by plaintiffs in their opposition) is not credible evidence to oppose summary judgment. See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." (citation and internal quotation marks omitted)); Di Giovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193, 202 (S.D.N.Y. 2009) (finding that claims in deposition based entirely on inadmissible hearsay – especially when deponent actually testified that he had no personal knowledge – are "an insufficient basis for opposing summary judgment" (quoting Capobianco v. City of New York, 422 F.3d 47, 55 (2d Cir. 2005); see also Fed. R. Civ. P. 56(c)(4) (requiring affidavits opposing summary judgment to "set out facts that would be admissible in evidence").

Viewing the evidence in the light most favorable to plaintiffs, Quamrunnisa Masihuddin's injury appears relatively minor. Plaintiffs do not even support her claim that she was hospitalized with hospital records. And a reasonable fact-finding might well conclude that it does not rise to the level of a constitutional violation. But through Quamrunnisa Masihuddin's affidavit that she was knocked to the floor and hospitalized – when there was no suggestion that force was required – and the affidavits of Amena Masihuddin and Saba Masihuddin that they witnessed her being knocked to the floor, the claim is not, as a matter of law, *de minimis*. Cf. Griffin v. Crippen, 193 F.3d 89, 91-92 (2d Cir. 1999) (reasoning, in the context of a summary judgment motion on an Eighth Amendment claim that, while the appellant's excessive force claim was weak and his supporting evidence extremely thin, his minor injuries, including a bruised shin and swelling in one knee, could not be said to be *de minimis* as a matter of law because genuine issues of material fact existed). But cf. Tierney, 133 F.3d at 199 (deeming three instances when plaintiffs' arms were grabbed and one instance in which a plaintiff was hit with a nightstick after she engaged in a struggle with a police officer and a third person *de minimis* ). As the parties dispute the existence and extent of Quamrunnisa Masihuddin's injuries, an issue of material fact for the jury is created. See Webster v. City of New York, 333 F. Supp. 2d 184, 197 (S.D.N.Y. 2004) (finding jury issue when plaintiff claims that she was pushed multiple times and felt instant pain, states she was treated with Motrin and experienced emotional distress and trembled for days). Accordingly, summary judgment cannot be granted as to this claim.

Regarding the second set of excessive force allegations, in their affidavits plaintiffs do not allege that they were injured, that more than *de minimis* force was used, or even that defendants came into contact with them in any way. See Romano, 998 F.2d at 105 ("A *de minimis* use of force will rarely suffice to state a constitutional claim."); see also Graham, 490

33

U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (citation and internal quotation marks omitted)). Thus, no reasonable juror could find that these allegations "shock the conscience"; summary judgment must be granted for defendants on these claims.[17]

In their statements of disputed facts, plaintiffs write that each defendant "assaulted" and "caused . . . bodily harm" to each plaintiff. But "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Giannullo, 322 F.3d at 140 (citing Holtz, 258 F.3d at 74 ("Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently.")). Here, plaintiffs have not supported their Rule 56.1 statements. Indeed, there does not appear to be any supporting evidence in the record for this claim beyond conclusory or otherwise inadmissible statements. See Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (finding conclusory allegations are insufficient to withstand a motion for summary judgment); Int'l Minerals and Res., S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996) ("The mere . . . scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonable find for the [non-movant]." (citations omitted)).

Accordingly, summary judgment should be denied as to Quamrunnisa Masihuddin's excessive force claim, but granted as to all other plaintiffs' claims. For the same reason, summary judgment must be denied as to Quamrunnisa Masihuddin's supplemental state law assault and battery claim, but granted as to all the other plaintiffs' assault and battery claims. See

---

[17] Plaintiffs' allegations also would fail under the Fourth Amendment's "objectively unreasonable" standard, as no force or injury was alleged. See Graham, 490 U.S. at 395.

Humphrey v. Landers, 344 F. App'x 686, 688 (2d Cir. 2009) (finding that "[e]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims] are essentially identical" (alternations in original; quoting Doherty, 944 F.2d at 94-95).

### D. Conspiracy Claims

In their amended complaint and statements of undisputed facts, plaintiffs also allege that defendants conspired to violate their federal constitutional rights. In order to state a § 1983 conspiracy claim, plaintiffs must allege facts showing: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal of causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); accord Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-35 (2d Cir. 2002). Plaintiffs have made no such showing and, accordingly, their conspiracy claims must be dismissed. See Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (finding that to survive motion to dismiss a plaintiff "must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end," augmented by "some details of time and place and the alleged effects of the conspiracy" (citation an internal quotation marks omitted)).

### E. Additional Fourteenth Amendment Claims Not Clearly Pled

For the sake of thoroughness, the Court also considers whether plaintiffs have alleged procedural and substantive due process claims under the Fourteenth Amendment (beyond plaintiffs' excessive force claims). Parents "have a constitutionally protected liberty interest in the care, custody and management of their children," and family members have a fundamental

right under the Fourteenth Amendment to be together. Tenenbaum, 193 F.3d at 593, 600.

Although "'the State has a profound interest in the welfare of the child,' any interference with

family integrity must be in accord with procedural and substantive due process guarantees, as

well as rights under the Fourth Amendment, among other provisions." Shapiro v. Kronfeld, 00

Civ. 06286 (RWS), 2004 WL 2698889, at *12 (S.D.N.Y. Nov. 24, 2004) (quoting Tenenbaum,

193 F.3d at 593-94); see also Phifer v. City of New York, 389 F.3d 49, 57-62 (2d Cir. 2002); Kia

P. v. McIntyre, 235 F.3d 749, 757-63 (2d Cir. 2000). Procedural due process "generally requires

a hearing prior to depriving a parent of custody or a prompt post-deprivation hearing if the child

is removed under emergency circumstances," while substantive due process protects against

"arbitrary government intrusions by requiring a reasonable basis or justification for such

actions." Velez v. Reynolds, 325 F. Supp. 2d 293, 303 (S.D.N.Y. 2004) (citations omitted).

Here, there were numerous hearings evaluating the removal of the Masihuddin children.

Although, the court orders discussed did not establish the reasonableness of certain searches as a

matter of law, there is no dispute that those documents were valid for removing the children from

their parents' custody. It is undisputed that Ruknuddin Masihuddin, moreover, was provided

numerous opportunities to contest the family court's decisions in person, even if defendants

could not prove that the August 4, 2008 order was actually served on him. Procedural due

process plainly was satisfied.

Similarly, when the removal of children is to keep them safe, and the Court confirms the

basis of the removal, there is no violation of substantive due process. See Nicholson, 344 F.3d at

172 (citing Tenenbaum, 193 F.3d at 600-01 & n.12). It is undisputed that the family court

warrants and orders in question were based upon enumerated considerations like the possibility

of severe emotional harm to the children. Accordingly, substantive due process was not violated.

To the extent Ruknuddin Masihuddin's claim is based upon his incarceration, his substantive due process rights were not violated for the reasons previously discussed in the context of his "arrest" claims.

### F.  Fifth Amendment Claims

Finally, plaintiffs' Fifth Amendment claims must be dismissed because the Fifth Amendment does not apply to municipal entities and employees. See Bussey v. Phillips, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) (citing Dusenbery v. United States, 534 U.S. 161, 167 (2002)); see also Pub. Utils. Comm'n of D.C. v. Pollak, 343 U.S. 451, 461 (1952).

## VI.   Qualified Immunity

### A.  Statement of Law

Defendants also move for summary judgment against plaintiffs based upon the individual defendants' alleged qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, application of the qualified immunity defense requires the court to decide (1) whether the plaintiff has shown a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Although the Supreme Court in Saucier mandated a "rigid order of battle," Purtell v. Mason, 527 F.3d 615, 622 (7th Cir. 2008), the Court subsequently abandoned its "inflexible" procedural approach and held that courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all. Pearson v. Callahan, 555 U.S. 223, 227, 239-40 (2009).

37

To be clearly established, a right must be sufficiently clear that "every reasonable official would have understood that what he was doing violates that right.'" Thayer v. Chiczewski, 705 F.3d 237, 255 (2d Cir. 2012) (citation omitted). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (citation omitted).

Notwithstanding the violation of a clearly established constitutional or statutory right, officials still may be entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; accord Winfield v. Trottier, 710 F.3d 49, 56-57 (2d Cir. 2013). In contrast, if the illegality of the conduct would not be so apparent, the officer would be entitled to qualified immunity. See Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007). Thus, even if a right is clearly established in certain respects, qualified immunity still will shield an officer from liability if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context. Malley v. Briggs, 475 U.S. 335, 341 (1986). In short, if at least some reasonable officers in the defendant's position "could have believed that [the challenged conduct] was within the bounds of appropriate police responses," the defendant officer is entitled to qualified immunity. Saucier, 533 U.S. at 208.

Qualified immunity is an "affirmative defense," which "it is incumbent upon the defendant to plead[] and adequately develop." Southerland, 680 F.3d at 141 (citations omitted). Accordingly, "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Barksdale v. Colavita, 506 F. App'x 82, 85 (2d Cir. 2012) (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)).

Only two constitutional claims survive defendants' motion at present: certain of the Fourth Amendment "search" claims and plaintiff Quamrunnisa Masihuddin's Fourteenth Amendment excessive force claim. Accordingly, the Court will focus its attention here, although for the sake of thoroughness I first will briefly address the "arrest" claims.

### B.  Application

Regarding the "arrest" claims, and as discussed earlier, the individual defendants had probable cause to arrest Ruknuddin Masihuddin. Indeed, even if doubts existed as to probable cause, officers of reasonable competence could have disagreed over whether the individual defendants were justified in arresting and prosecuting Ruknuddin Masihuddin. Therefore, the individual defendants are protected by qualified immunity regarding all of the "arrest" claims.

In their opposition, plaintiffs specifically challenge the violation petition filed against Ruknuddin Masihuddin. But the mere fact that the Queens family court eventually rejected the petition on procedural grounds does not establish that defendants (in this case Bradley) acted unreasonably in filing it. See, e.g., Ampratwum v. City of New York, 11 Civ. 06111 (DLC), 2013 WL 1935321, at *7 (S.D.N.Y. May 9, 2013) (quoting Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("[T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.")). Accordingly, plaintiffs' objection does not alter this analysis.

Regarding the "search" claims, the inquiry focuses on Gavin, as he is the only defendant who – reading plaintiff's claims liberally – was present during the searches. On the facts presented to the Court, defendants have not met their burden of showing that Gavin is entitled to qualified immunity for the searches or Quamrunnisa Masihuddin's claim of excessive force.

39

With respect to the warrantless search claims, as of <u>Tenenbaum</u>, 193 F.3d 581, it has been "unconstitutional for state officials to effect a child's removal on an 'emergency' basis where there is reasonable time safely to obtain judicial authorization consistent with the child's safety." <u>Id.</u> at 596. And officers also cannot rely on family court orders as a "blanket authorization" to justify an otherwise warrantless search. <u>Hurlman</u>, 927 F.2d at 80 (citing <u>Steagald</u>, 451 U.S. 204). Thus, Gavin's qualified immunity for the searches cannot be based on a lack of clearly established law.

Gavin's qualified immunity also cannot be based on objective reasonableness. On the record provided, the Court cannot determine whether Gavin: (1) reasonably thought that the Masihuddin children were present at the four locations allegedly illegally searched; or (2) reasonably thought that ACS policy allowed broad warrantless searches to find neglected children. <u>See</u> <u>Walcyk v. Rio</u>, 496 F.3d 139, 163-64 (2d Cir. 2007). Because of the lack of substantive argument in defendants' motion papers, the Court cannot – as a matter of law – make the determination that officers of reasonable competence could disagree as to whether the searches of the four locations were justified. On this record, there plainly are disputed issues of material fact as to the reasonableness of the searches. <u>See</u> <u>Barksdale</u>, 506 F. App'x at 85. Accordingly, Gavin's entitlement to qualified immunity cannot be established, at least at this juncture, and summary judgment in his favor must be denied as to this claim. <u>See</u> <u>Walcyk</u>, 496 F.3d at163-64 (finding further record development factfinding necessary to establish whether competent officers would reasonably think plaintiff was at locations searched); <u>see also</u> <u>Richards v. City of New York</u>, 433 F. Supp. 2d 404, 420-21 (S.D.N.Y. 2006) ("Because a reasonable jury could find against [individual defendants] on this issue, a genuine issue of material fact exists

with respect to it" and "[i]t is for the jury at trial to determine whether plaintiffs have proved their serious charges").

With respect to the excessive force claim, "[t]he right of an individual not to be subjected to excessive force has long been clearly established." Calamia, 879 F.2d at 1036. Thus, the question is whether it was objectively reasonable for Gavin to believe that his alleged treatment of Quamrunnisa Masihuddin did not violate that right. Despite the Court's doubts as to the strength of Quamrunnisa Masihuddin's claim, "[t]his [is] a matter as to which the facts [are] not undisputed, and hence it [is] a question to be answered by a properly instructed jury." Id.; see Richards, 433 F. Supp. 2d at 420-21. Accordingly, Gavin is not entitled to summary judgment on the ground of qualified immunity for Quamrunnisa Masihuddin's excessive force claim.

## VII.   Municipal Liability

Defendants also move to dismiss plaintiffs' claims against ACS. As a preliminary issue, "[c]ity agencies are not suable entities." Friedman, 502 F. App'x at 27 n.3. Instead, New York City (the "City") is the proper defendant when plaintiff seeks to bring an action pursuant to the official acts of its City agencies. Emerson v. City of New York, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) (ACS is not a suable entity; pursuant to N.Y. City Charter, Ch. 17 § 396 "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency . . . ."). Because Plaintiffs are *pro se*, the Court will substitute the City for ACS as a defendant.

Turning to the substance of the defendants' summary judgment motion, "municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs., 436 U.S.

41

658 (1978)). Municipalities are not subject to federal constitutional liability under theories of *respondeat superior*, but rather on the basis that the policies or customs "inflict[ed] the injury upon the plaintiff." Id. (citing Monell, 436 U.S. at 694). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead three elements: (1) an official policy or custom that[;] (2) causes the plaintiff to be subjected to[;] (3) a denial of a constitutional right." Id.; see Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

Defendants contend that all claims against the City must be dismissed because there is insufficient evidence to create an issue of material fact as to whether the City has a policy, practice or custom pursuant to which the plaintiffs' constitutional rights were violated.

With respect to the "arrest" claims, plaintiffs do not respond to the City's argument and have put forth no supporting evidence. Accordingly, plaintiffs have abandoned these claims. In any event, the claims must be dismissed because there is no evidence to support them. See Adam v. M.T.A., 07 Civ. 08807 (JGK), 2011 WL 891441, at *4 (S.D.N.Y. Mar. 15, 2011) (granting summary judgment when plaintiffs put forth no evidence supporting Monell claims); see also Askins v. Doe No 1, __ F.3d __, 12-00877-cv, 2013 WL 4488698, at *3 (2d Cir. Aug. 23, 2013) (finding that district court "was entirely correct in stating that the City cannot be liable under Monell where [p]laintiff cannot establish a violation of his constitutional rights").

With respect to the "search" claims, plaintiffs assert that the City has a policy and practice of conducting warrantless searches for children. But plaintiffs must provide evidence of such a policy or practice; they cannot simply state that it exists. See Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22 (2d Cir. 2012) (collecting cases). Here, in their submitted affidavits and Rule 56.1 responses to defendants' statements, plaintiffs do not cite to any deposition transcript or other evidence that might help establish their claim. Instead, the depositions suggest that

42

defendants did not believe they required warrants to check-up on children when given permission to enter a home – and not that ACS had a policy countenancing warrantless entry when contested by an occupant. Accordingly, summary judgment must be granted in the City's favor on all claims. These same arguments also doom plaintiffs' state law claims for failure to train or supervise, which likewise must be dismissed. See Rodriguez v. City of New York, 649 F. Supp. 2d 301, 308 (S.D.N.Y. 2009) (dismissing state law claim for failure to train because of same arguments discussed in Monell analysis).

The City may be liable, however, under a theory of *respondeat superior* for state law trespass and assault and battery claims. See, e.g., Williams v. City of White Plains, 718 F. Supp. 2d 374, 382 (S.D.N.Y. 2010) (denying defendants motion for summary judgment for state law claim of assault and battery); Richards, 433 F. Supp. 2d at 430-31 (denying summary judgment against the City for state law claim of trespass); Wahhab v. City of New York, 386 F. Supp. 2d 277, 291 (S.D.N.Y. 2005) (denying the City's motion for summary judgment as to plaintiff's state law assault and battery claim because of disputed issues of fact). Accordingly, these claims cannot be dismissed at this stage.

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment be DENIED as to (1) the Fourth Amendment search and state law trespass claims of Ruknuddin Masihuddin, Quamrunnisa Masihuddin, Amena Masihuddin, Saba Masihuddin, Phulmattie Masihuddin and Qaiser Choudri, as they relate to Gavin and the City (only as to the state law claims) and (2) the Fourteenth Amendment excessive force claim and state law assault and battery claim of Quamrunnisa Masihuddin as they relate to Gavin and the City (only as to the state law claims), but be GRANTED as to all other claims. Accordingly, defendants Kelly

Bradley, Cynthia Gallardo, Gail Banton, Natasha Bruneus, and plaintiff Achamma Mathew
should be dismissed from this action.

To the extent that plaintiff's opposition should be understood as a cross-motion for
summary judgment, I further recommend that it be DENIED as lacking a valid basis in law or on
the facts presented.

Finally, I recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any
appeal from a final decision on this motion would not be taken in good faith, and therefore *in
forma pauperis* status should be denied for the purpose of an appeal. See Coppedge v. United
States, 369 U.S. 438, 444-45 (1962).

*  *  *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation
to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules
of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service
is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another
party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).
Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the
chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street,
New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R.
Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be

addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**SO ORDERED.**

_____

SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
            September 16, 2013

45